# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| MARGARET MONTGOMERY, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION 14-0405-WS-C |
| FOOD GIANT SUPERMARKETS, INC., | ) |
| Defendant. | ) |

## ORDER

This matter comes before the Court on the plaintiff's Motion to Remand (doc. 6). The Motion has been briefed and is now ripe for disposition.

I. **Background.**

On April 24, 2014, plaintiff, Margaret Montgomery, filed this lawsuit against defendant, Food Giant Supermarkets, Inc., d/b/a Piggly Wiggly, in the Circuit Court of Baldwin County, Alabama. The Complaint alleged that Montgomery sustained injuries while an invitee on the premises of defendant's Piggly Wiggly store in Bay Minette, Alabama, when part of the "W" in the storefront sign "broke loose and fell off violently, striking the Plaintiff upon the head, causing severe injuries." (Complaint (doc. 1-1), ¶ 8.) Montgomery attributes this incident to Food Giant's negligence or wantonness, theorizing that defendant either knew or should have known that the Piggly Wiggly sign was structurally defective and/or was not being properly inspected or maintained. In the *ad damnum* clause of the Complaint, Montgomery demanded unspecified compensatory damages for "Head, Back, Neck and Whole Body Injuries;" "Loss of Enjoyment of Life, both Past and Future;" "Medical Expenses, both Past and Future;" "Mental and Physical Pain and Suffering, both Past and Future;" and "Permanent Disability." (*Id.*, ¶ 10.) Plaintiff also demanded punitive damages, again in an unspecified amount. (*Id.*, ¶ 11.)

On September 2, 2014, Food Giant filed a Notice of Removal (doc. 1), removing this action to this District Court. To establish federal removal jurisdiction, Food Giant invoked the diversity provisions of 28 U.S.C. § 1332 and alleged that there was complete diversity of

citizenship between the parties.  With respect to the statute's amount-in-controversy requirement, Food Giant cited a demand letter from plaintiff's counsel to defendant's counsel, dated August 20, 2014, and offering to settle Montgomery's claims for the sum of $100,000.[1]  Defendant characterized the August 20 letter as "other paper" giving rise to a right of removal pursuant to 28 U.S.C. § 1446(b).

Plaintiff now moves to remand this action to Baldwin County Circuit Court on the ground that federal subject matter jurisdiction is lacking because the amount-in-controversy prong of the diversity test is not satisfied here.

**II.     Analysis.**

   *A.     Legal Standard for Motion to Remand.*

A removing defendant must establish the propriety of removal under 28 U.S.C. § 1441 and, therefore, must demonstrate the existence of federal jurisdiction.  *See Friedman v. New York Life Ins. Co.*, 410 F.3d 1350, 1353 (11th Cir. 2005) ("[i]n removal cases, the burden is on the party who sought removal to demonstrate that federal jurisdiction exists") (citation omitted); *Sammie Bonner Const. Co. v. Western Star Trucks Sales, Inc.*, 330 F.3d 1308, 1310 (11th Cir. 2003) ("Because Western Star sought removal to federal court, it bore the burden of proving that Bonner's claims satisfied the minimum amount in controversy requirement.").  Because removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all doubts resolved in favor of remand.  *See University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) ("explaining that strict construction of removal statutes derives from "significant federalism concerns" raised by removal jurisdiction).

There being no federal question presented in the Complaint, Food Giant's sole theory of removal was diversity of citizenship.  Under 28 U.S.C. § 1332(a), federal courts have original

---

[1]     The body of this letter reads, in its entirety, as follows:

"After talking with my client, based on her week-long stay in the Mobile Infirmary and her continuing problems with headaches, her hearing, and dizziness, she has agreed to accept the sum of $100,000.00 as full settlement for her traumatic head injury caused by the lettering falling from your client's sign. Please contact your client and get back with me regarding this offer of settlement."

(Doc. 1, Exh. C.)

jurisdiction over all civil actions between citizens of different states where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. *See Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1085 (11th Cir. 2010) ("For federal diversity jurisdiction to attach, all parties must be completely diverse … and the amount in controversy must exceed $75,000.") (citations omitted). "In light of the federalism and separation of powers concerns implicated by diversity jurisdiction, federal courts are obligated to strictly construe the statutory grant of diversity jurisdiction … [and] to scrupulously confine their own jurisdiction to the precise limits which the statute has defined." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1268 (11th Cir. 2000) (citations omitted); *see also Osting-Schwinn*, 613 F.3d at 1086 (similar).

### B. *The Amount in Controversy.*

In her Motion, plaintiff posits that remand of this action is necessary because "the Defendant has failed, by a preponderance of the evidence, to show … that the amount in controversy exceeds $75,000.00." (Doc. 6, at 1.) Plaintiff has not identified any alleged procedural infirmities in Food Giant's removal; rather, the sole issue presented by the Motion to Remand, and sole issue now before this Court, is whether the removing defendant has satisfied the jurisdictional amount-in-controversy requirement.

As a threshold matter, Montgomery is correct that Food Giant bears the burden of proof as to amount in controversy. It is well settled that "[i]f a plaintiff makes an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the … jurisdictional requirement." *Roe v. Michelin North America, Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (citations and internal quotation marks omitted). To be sure, a removing defendant "is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010). Rather, the defendant may meet its burden by showing either that it is "facially apparent from the pleading itself that the amount in controversy exceeds the jurisdictional minimum," or that there is "additional evidence demonstrating that removal is proper." *Roe*, 613 F.3d at 1061 (citations omitted). What the defendant may not do, however, is rely exclusively on "conjecture, speculation, or star gazing" to show the requisite amount in controversy. *Pretka*, 608 F.3d at 754.

In its Notice of Removal, Food Giant disclaimed any intent to remove under the "facially apparent" prong of *Roe*, but cited "additional evidence demonstrating that removal was proper," in the form of the August 20 demand letter and documentation fixing Montgomery's medical bills to date at $69,237.51. (Doc. 1, ¶¶ 9, 22, 23.) Offers of settlement or demand letters are relevant and may be considered in evaluating the § 1332 amount in controversy for removal purposes; however, their utility varies widely depending on the circumstances. As the Eleventh Circuit has put it, "[w]hile [a] settlement offer, by itself, may not be determinative, it counts for something." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 (11th Cir. 1994). In determining what that "something" is, courts draw distinctions between settlement offers steeped in puffery and posturing at a high level of abstraction, on the one hand, and those yielding particularized information and a reasonable assessment of value, on the other. *See, e.g., Jackson v. Select Portfolio Servicing, Inc.*, 651 F. Supp.2d 1279, 1281 (S.D. Ala. 2009) ("Settlement offers commonly reflect puffing and posturing, and such a settlement offer is entitled to little weight in measuring the preponderance of the evidence."); *Benandi v. Mediacom Southeast, LLC*, 2011 WL 5077403, *2 (S.D. Ala. Sept. 30, 2011) ("This Court has held that a settlement demand is actually relevant evidence of the amount in controversy if it includes specific information to reflect a reasonable estimate of the plaintiff's claim."); *Diaz v. Big Lots Stores, Inc.*, 2010 WL 6793850, *2 (M.D. Fla. Nov. 5, 2010) ("The evidentiary value of a settlement offer in establishing the amount in controversy depends on the circumstances of the offer."); *Hall v. CSX Transp., Inc.*, 2006 WL 3313682, *2 n.5 (M.D. Ala. Nov. 14, 2006) ("despite the court's consideration of Plaintiff's pre-removal settlement offer … Defendant has not persuaded this court that Plaintiff's settlement demand was an honest assessment of damages").

Here, the August 20 demand letter is a barebones document that sets forth a dollar figure, but offers precious little in the form of specific information explaining how that figure was derived or how it might represent an honest assessment of Montgomery's damages. What's more, the August 20 letter on its face invited a dialogue about settlement, and was not couched in any kind of rigorous analytical framework. By all appearances, then, this settlement demand was nothing more than an initial volley, a shot across the bow by Montgomery. For aught the record shows, the August 20 letter was designed to start the bidding at a high number, rather than to set forth a realistic, clear-eyed evaluation of what is potentially recoverable to Montgomery at trial.

On that basis, the Court readily concludes that the August 20 letter, considered in isolation, merits little weight in the § 1332 amount-in-controversy calculus.

Food Giant hastens to clarify that it is not relying on the August 20 demand letter in a vacuum, but that removal was also predicated on Montgomery's total accrued medical bills in excess of $69,000. According to defendant, this figure buttresses the legitimacy of the $100,000 settlement demand, and tends to confirm that it was not the product of exaggeration or puffery. As Montgomery points out, however, this argument breaks down because of the divergence between the raw totals of plaintiff's medical bills and the damages for which she seeks recovery in this action. Plaintiff explains that Medicare and Medicaid "paid all of Ms. Montgomery's medical bills due to this injury" (doc. 11, at 1), and presents copies of her bills reflecting large markdowns and write-offs for these governmental entities. (Doc. 11, Exh. A.)² The point is that there is little correlation between the gross amount of Montgomery's medical charges and plaintiff's compensatory damages (*i.e.*, the amounts actually paid by Medicare/Medicaid, which will be the subject of a subrogation lien herein). Thus, the actual amount of plaintiff's medical bills included in her claim for damages in this case is far lower than the $69,000 figure cited by Food Giant. For that reason, the medical bill exhibits submitted by Food Giant neither bolster the utility of the August 20 demand letter as an indicator of the amount in controversy, nor otherwise tend to show the $75,000 jurisdictional minimum for diversity jurisdiction is present here.³

---

² For example, one statement from Mobile Infirmary Medical Center reflects that a bill of $5,350.62 received a "contractual adjustment" of $4,626.02 as to Medicare Part B as well as other adjustments, such that Medicare ultimately paid just $505.73 in satisfaction of that invoice. (Doc. 11, Exh. A, at 7-8.)

³ Defendant also looks to support the amount in controversy via plaintiff's discovery responses served on July 23, 2014. In response to an interrogatory about her injuries, Montgomery wrote, "My head, neck, and back were injured. I continue to have headaches, memory loss, blurred vision, and hearing loss due [to] the blow to my head. Plus I have a scar." (Doc. 6, Exh. 5, at #15.) Tellingly, however, Food Giant did not mention this discovery response in its Notice of Removal, nor did it remove the case within 30 days after being served with this interrogatory response. Such facts appear to underscore defendant's own recognition that plaintiff's nonspecific interrogatory response was too slender a reed to support a determination by the preponderance of the evidence that the amount in controversy in this case exceeds $75,000. The Court agrees. These statements are simply too non-specific. For example, what is the frequency of Montgomery's headaches? How severe and debilitating are they? The record (Continued)

In sum, the Court finds that Food Giant has not satisfied its burden of proving by a preponderance of the evidence that the amount in controversy more likely than not exceeds the jurisdictional requirement. While plaintiff's counsel did make a settlement demand of $100,000, this demand lacks indicia showing it to be a reasonable valuation of Montgomery's claims, as opposed to mere posturing. While plaintiff's medical bills are in excess of $69,000, only a small fraction of those expenses may qualify as damages to Montgomery in this case, because the out-of-pocket costs incurred by plaintiff (or, more accurately, paid by Medicare/Medicaid) is much, much lower than the amounts originally invoiced. And generic references in discovery responses to things like headaches and blurred vision do not suffice, either. Under the circumstances and because all doubts as to removal jurisdiction are resolved in favor of remand, the Court cannot find that the amount in controversy exceeds $75,000 without engaging in impermissible conjecture; therefore, Food Giant has not met its burden on removal. Diversity jurisdiction is lacking; therefore, remand is necessary.

## III. Conclusion.

For all of the foregoing reasons, plaintiff's Motion to Remand (doc. 6) is **granted**. This action is **remanded** to the Circuit Court of Baldwin County, Alabama, for further proceedings.

DONE and ORDERED this 16th day of October, 2014.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

does not say; therefore, Court lacks essential information to evaluate that aspect of plaintiff's claim of injury. Without more detail, the Court would have to engage in impermissible speculation and guesswork to assign a monetary value to Montgomery's allegations of "headaches, memory loss, blurred vision, and hearing loss" in this case. To be sure, federal courts "may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." *Roe*, 613 F.3d at 1062. But it remains the removing defendant's burden to present sufficient evidence to which that judicial experience and common sense may be meaningfully applied. Defendant has not done so here, as plaintiff's vague statements about headaches and blurred vision lack necessary depth and detail to permit reasonable valuation assessments.